Mark R. Vermeulen [State Bar No. 115381]
Law Office of Mark R. Vermeulen
755 Florida Street #4
San Francisco, CA 94110.2044
Phone: 415.824.7533
Fax: 415.824.4833

Attorney for Petitioner
KENNETH VERNON

FILED

03 MAY -8 AM 10: 53

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH VERNON,

    Petitioner,

v.

ANTHONY A. LAMARQUE, Warden, and DOES 1-10,

    Respondents.

) No. C 00-3311 MJJ
)
) **ADDITIONAL EXHIBITS IN SUPPORT OF FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**
) [28 U.S.C. § 2254]

    Petitioner Kenneth Vernon previously submitted Exhibits A through E with his Exhibits In Support Of Petition For Writ Of Habeas Corpus By A Person In State Custody, filed November 4, 2002. Those exhibits are referenced in the First Amended Petition, which is filed simultaneously with this filing. This filing contains Exhibits F through J, which similarly are referenced in the First Amended Petition. The exhibits contained here are as follows:

    Exhibit F    California Supreme Court's order filed April 9, 2003 in People v. Kenneth Jerome Vernon, California Supreme Court No. S078530 (denying petition for writ of habeas corpus)

    Exhibit G    Declaration Of Ernestine Vernon

    Exhibit H    Declaration Of William Vernon

    Exhibit I    Declaration Of Shirley Washburn

///

Exhibit J    Juror note re: blood levels of d-amphetamine and amphetamine

Dated: May 6, 2003

Respectfully submitted,

_____
Mark R. Vermeulen
Attorney for Petitioner
KENNETH VERNON

# Exhibit F
California Supreme Court's order filed April 9, 2003
in <u>In re Kenneth Vernon on Habeas Corpus</u>,
California Supreme Court, No. S103597
(denying petition for writ of habeas corpus)

S103597

# IN THE SUPREME COURT OF CALIFORNIA

En Banc

In re KENNETH VERNON on Habeas Corpus

Petition for writ of habeas corpus DENIED.

**SUPREME COURT**
**FILED**

APR - 9 2003

**Frederick K. Ohlrich Clerk**

DEPUTY

GEORGE
Chief Justice

# Exhibit G
Declaration Of Ernestine Vernon

## **DECLARATION**

I, Ernestine Vernon, do declare and state the following:

1. I am a resident of the State of California, and over the age of eighteen years, and

2. I am the mother of Kenneth Vernon, and the wife of William Vernon, and

3. I was personally present on almost every day of both trials of my son, Kenneth, at the San Joaquin County Courthouse in Stockton, California, and

4. From time to time, my husband William, also came to the courthouse to observe the trials. Also, from time to time, my friend, Shirley Washburn, would also accompany me to the courthouse and sit with me in the courtroom or out in the hallway outside of the courtroom, and

5. During the course of the second trial, I recall an incident where Shirley Washburn, William, and myself were sitting on the bench outside of the courtroom. This was either before the beginning of the day's proceedings, or while the court was in recess, taking a break, or the like. As we were sitting there, I observed a man to drop something just in front of my husband, William. As the man was bending down to pick up the object, he turned to William and asked if William was the brother of Jack Vernon. William replied that he was, and the man responded by saying, "Oh. Good." The man then walked away, and

6. Later, when court had resumed, and I was sitting in the courtroom observing the trial, I noticed that the man that had contact with William in the hallway was a juror. I recall that my friend, Shirley Washburn, drew my attention to that juror by asking me if that was the man that had talked to William in the hallway, and

7. From time to time, I also observed that the prosecutor in the trial, Mr. Schultz, would engage in conversations with members of the jury, during the recesses and breaks. Mr. Schultz would usually be standing in front of the juror's box when he engaged in these conversations. Further, Mr. Schultz would also engage in and help facillitate "three-way conversations" with the juror's and members of the victim's family, who were seated in the audience. I personally witnessed members of the victim's family engage in conversation directly with members of the jury during these breaks and recesses, and

8. I also observed on a number of occasions that one of the jurors would bring food to the courtroom where she would share it with other jurors as well as with the prosecutor, Mr. Schultz, and also, on occasion, with the bailiffs, the court clerk, and the court reporter, and

9. At the beginning of the second trial, I was informed by Mr. Cingcon that I could not be in the courtroom during the process where the jury was picked. Mr. Cingcon told us that there wasn't enough room for me to be there. After the jury was picked, we returned to the courtroom. The jury was then brougnt in and opening arguments were made. During the opening arguments, I noticed that there was a member of the jury that I knew. After opening arguments were completed, I then had an opportunity to inform the defense attorney, Mr. Cingcon, that I knew one of the jurors, and

10. I recognized the juror as a member of the Withers family, whose members I, and my husband, had known for many years. Further, I believed that the juror, as well as the relatives of that juror, either knew or was related to one of the witnesses in our son's case. That witness was Doyle Dubois, Jr. We both believed that the juror we saw was Linda Withers, and was related to the Withers family of Stockton. Both my husband and I had known many

members of the Withers family for almost all of our lives. In fact, my son Kenneth played little league baseball with the Withers' children. My husband had known an Alan Withers almost all of his life, as they had gone through school together since they were children. Alan is a member of the Withers family. Further, we both knew Lavanda Withers, who was a friend of ours for many years. Lavanda is married to Tom Dubois, who is the uncle of Doyle Dubois, Jr. (the prosecution witness in this case). Two or three days later, my husband came to the courtroom and he also noticed Linda Withers to be a member of the jury. Without prompting, he asked me "What is a Withers doing on the jury?", and

11. On one or more occasion, as either William, myself, and/or Shirley Washburn were coming from or going to the courthouse, we observed that there was an area set aside for people to smoke cigarettes. We observed that some of the members of our son's jury would congregate there. On one or more occasion, we observed that there were other people in that same area and that they would be talking with the jurors. These other people whom I saw talking with the jurors included members of the victim's family.

I declare, under penalty of perjury, that the foregoing is true and correct, and would so testify in any court of law.

Executed this __5__ day of __September__, 20_00_, at __Stockton__, California.

Signed: ___Ernestine Vernon___
    Ernestine Vernon

Witnessed by: _____
Print Name: __SANFORD GLICKMAN__

**Exhibit H**
Declaration Of William Vernon

**DECLARATION**

I, William Vernon, do declare and state the following:

1.  I am a resident of the State of California, and over the age of eighteen years, and

2.  I am the father of Kenneth Vernon, and the husband of Ernestine Vernon, and

3.  On occasion, I was personally present at the trial of my son, Kenneth, at the San Juaquin County Courthouse in Stockton, California. I could not attend the trials every day as I was employed and could not leave work as I had wished, and

4.  On the occasions that I was able to attend the second trial, my wife, Ernestine would be in attendance. Also, on occasion, our friend, Shirley Washburn, would also accompany my wife to court. Shirley would sit with her in the courtroom or out in the hallway outside of the courtroom, and

5.  During the course of the second trial, I recall an incident where Shirley Washburn, Ernestine, and myself were sitting on the bench outside of the courtroom. This was either before the beginning of the day's proceedings, or while the court was in recess, taking a break, or the like. As we were sitting there, I observed a man to drop something just in front of me. As the man was bending down to pick up the object, he turned to me and asked if I was the brother of Jack Vernon. I replied that I was, and the man responded by saying, "Oh. Good." The man then walked away, and

6.  Later, when court had resumed, and I was sitting in the courtroom observing the trial, I noticed that the man who had contact with me in the hallway was a juror, and

7. From time to time, I observed that the prosecutor in the trial, Mr. Schultz, would engage in very friendly conversations with various members of the jury, during the recesses and breaks. Mr. Schultz would usually be standing in front of the raised platform area where the jurors were sitting, when he engaged in these conversations. I observed the jurors and Mr. Schultz to be laughing and smiling during these exchanges, and

8. I also observed on several occasions, during the breaks and recesses, that the prosecutor would converse wtih members of the victim's family who were seated in the audience in the courtroom. Various members of the jury were also present during these conversations. At times, the prosecutor, members of the victim's family and members of the jury would engage in these conversations all together. The conversations were friendly and jovial, and

9. About two to three days after the opening arguements of the second trial took place, I had occasion to come to the courtroom to observe the trial. Upon sitting down in the audience, I immediately recognized that one of the jurors looked very familiar to me. The juror resembled many members of the Withers family, whose members I have known for almost all my life. I believed that the juror in question was Linda Withers, and was related to the members of the Withers family that I knew. My son Kenneth played little league baseball with the Withers children, and

10. Further, both my wife and I believed that the juror, as well as the relatives of that juror, either knew or was related to one of the prosecution witnesses in our son's case. That witness was Doyle Dubois, Jr. Doyle Dubois, Jr. was the nephew of Tom Dubois. Tom's wife is Lavanda, whose maiden name is Lavanda Withers. Both my wife and I have known both Tom and Lavanda for many years, and

11. On one or more occasion, as Ernestine, myself, and/or Shirley Washburn were coming from or going to the courthouse, we observed that there was an outside area set aside for people to smoke cigarettes. We observed that some of the members of our son's jury would congregate there. On one or more occasion, we observed that there were other people in that same area and that they would be talking with the jurors. These other people whom I saw talking with the jurors included members of the victim's family.

I declare, under penalty of perjury, that the foregoing is true and correct, and would so testify in any court of law.

Executed this **5th** day of **September**, 20**00**, at **Stockton**, California.

Signed: _William Vernon_
William Vernon

Witnessed by: _[signature]_
Print name: _STANFORD GLICKMAN_

# Exhibit I
Declaration Of Shirley Washburn

**DECLARATION**

I, Shirley Washburn, do state and declare the following:

1. I am a resident of the State of California and over the age of eighteen years, and

2. I am a friend of Ernestine Elaine Vernon and William Vernon, who are the parents of defendant Kenneth Vernon, and

3. During the course of the second trial of Kenneth Vernon, I accompanied my friend, Ernestine Vernon, to the courthouse for the purpose of providing moral support for her, and

4. On some of the occasions that I accompanied Ernestine to court, her husband William would also be present, and

5. I recall a time when I had accompanied Ernestine to court, that William Vernon was also present. We were sitting out in the hallway outside of the courtroom where the trial was being held. I recall a specific occasion wherein a man had contact directly with William Vernon. It is my recollection that the man asked William if he was the brother or a relative of another person by the last name of Vernon. I do not recall the specific name that he mentioned. William answered that he was in fact, a relative of that person, and

6. After that man had contact with William Vernon, I was in the courtroom while the trial was in session. I then recognized the man (previously referred to in paragraph five above, that had contact with William Vernon in the hallway) as being a member of the jury, and

7. I personally witnessed the prosecutor in the case, a Mr. Schultz, during breaks and while the trial was not in session, to be

engaged in conversation with various members of the jury. Mr. Schultz usually was standing in the raised area where the jury seats were located when he engaged in this dialogue, and

8. I personally witnessed a member of the jury to bring some light food (such as fruit and the like) into the courtroom. She shared this food with various members of the jury, as well as the prosecutor, Mr. Schultz. This happened on more than one occasion when I was present.

I declare, under penalty of perjury, that the foregoing is true and correct, and would so testify in any court of law.

Signed this 5th, day of September, 20 00, at Stockton, California.

Signed: /s/ Shirley Washburn
        Shirley Washburn

Witnessed by: /s/ Sanford Glickman
Print name: SANFORD GLICKMAN

# Exhibit J
Juror note re: blood levels of d-amphetamine and amphetamine

- Commitments Exchanged
- Journal Entry
- Thoughts & Ideas
- Agendas (telephone, meetings)
- Conversations

MONTH _____ YEAR _____

**DAILY RECORD OF EVENTS**

DATE _____

Q. CONCERNING BLOOD LEVELS OF D-AMPHETAMINE AND AMPHETAMINE FOUND IN ROBIN MCCLARY. THERE WAS NO EVIDENCE PRODUCED TO SUBSTANTIATE THE USE OF AMPHETAMINES BY - INHALATION - ORAL INGESTION OF INJECTION. HOWEVER, ROBIN MCCLARY DID SUFFER FROM ALLERGIES AND A BRONCHIAL DISORDER.

IF ROBIN TOOK PRESCRIPTION MEDICATION FOR BREATHING AND ANY OVER THE COUNTER MEDICATION FOR ALLERGIES OR ASTHMA - THOSE DRUGS WILL SHOW A FALSE POSITIVE TEST FOR AMPHETAMINES -

THE STATEMENT BY BOTH DEFENSE AND PROSECUTION THAT SHE USED AMPHETAMINES MAY NOT BE VALID.

**RECEIVED**
MAR 05 1997
JEANNE MILLSAPS, Clerk
TRUDY C. CLARK
_____
Deputy Clerk

©1992 Franklin Quest Co. Printed in U.S.A.        Classic Form #4001